LOUIS M. BUBALA III, ESQ.
State Bar No.: 8974
ARMSTRONG TEASDALE LLP
50 W. Liberty St., Ste. 950
Reno, NV 89501
Telephone: 775.322.7400
Fax: 775.322.9049
Email: lbubala@armstrongteasdale.com
 and  bsalinas@armstrongteasdale.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BRANCH BANKING & TRUST CO., | Case No.: 3:12-cv-_____-___-_____ |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| BIG STUFF STORAGE LLC; MARY C. MILLER; JOHN A. SCHOPF, JR.; WENDY AUSLEN SCHOPF; and CITY OF RENO, | |
| Defendants. | |

**I.  PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Branch Banking & Trust Co. ("BB&T") is a corporation incorporated in North Carolina; registered as a foreign corporation in Nevada; has its headquarters and principal place of business in North Carolina; and is deemed a citizen of North Carolina.  28 U.S.C. § 1332(c).

2. Defendant Big Stuff Storage LLC ("Big Stuff") is a Nevada limited liability company doing business in Washoe County, Nevada.

   a. Upon information and belief, members Alan and Elizabeth Huber reside in Washoe County, Nevada; are deemed citizens of Nevada; and thus Big Stuff is deemed a citizen of Nevada.

   b. Upon information and belief, members Mark and Giselle Huber reside in Salt Lake County, Utah; are deemed citizens of Utah; thus Big Stuff also is deemed a citizen of Utah.

   c. Upon information and belief, there are no other members of Big Stuff.

3. Defendant Mary C. Miller is, upon information and belief, a resident of Douglas County, Nevada, and deemed a citizen of Nevada.

- 1 -

4. Defendant John A. Schopf, Jr., is, upon information and belief, a resident of Douglas County, Nevada, and deemed a citizen of Nevada.

5. Defendant Wendy Auslen Schopf is, upon information and belief, a resident of Douglas County, Nevada, and deemed a citizen of Nevada.

6. Defendant City of Reno is a municipal corporation in Nevada and deemed a citizen of Nevada.

7. Jurisdiction exists in this District Court because this is a matter in controversy exceeding the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1).

8. Venue is proper in the unofficial Northern Division because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is subject to the action is situated in Washoe County, Nevada.  28 U.S.C. § 1391(a)(1);  L.R. IA 6-1.

## II.  GENERAL ALLEGATIONS

9. Big Stuff owns a self-named storage facility at 7875 North Virginia Street in Reno, Nevada, whose real property ("Property") is further identified as Assessor's Parcel Number 082-290-19 and more particularly described as follows:

> Commencing at the West quarter corner of Section 15, Township 20 North, Range 19 Ease, M.D.B.&M., thence North 0°53' West along the Western line of said Section 15, a distance of 223.00 feet to the Southern line of U.S. Highway No. 395, (100 feet wide); thence South 62°00' East along the last mentioned line 400 feet to the true point of beginning; thence South 62°00' East along said Southern line of U.S. Highway No. 395, a distance of 243.00 feet; thence South 28°00' West 484.12 feet; thence South 29°11' West 279.88 feet to the Northern right of way line of the Western Pacific Railroad Co.; thence North 76°08' West along the last mentioned line 192.53 feet to the Western line of said Section 15; thence North 1°08' West along the last mentioned line 103.68 feet to a line drawn South 28°00' West from the true point of beginning; thence North 28°00' East 720.40 feet to the true point of beginning.  Situate in the Northwest 1/4 of Southwest l/4 and Southwest 1/4 of Northwest 1/4 of said Section 15.

10. On or about May 19, 2006, the Big Stuff executed and delivered to Colonial Bank, N.A. ("Colonial") a Promissory Note in the principal sum of $875,000 (the "Note," modified in part by subsequent documents), a first priority Deed of Trust (the "Deed") recorded against and encumbering

the Property, and an assignment of and security interest in rents from the Property (collectively, "Loan Documents"). Copies are attached as **Exhibits 1-3**, respectively.

11. On or about September 18, 2007, Defendants Mary C. Miller, John A. Schopf, Jr., and Wendy Auslen Schopf recorded a second priority deed of trust against the Property.

12. On or about August 19, 2009, Colonial Bank was closed by the Alabama State Banking Department, and the Federal Deposit Insurance Corporation ("FDIC") was named Receiver.

13. On or about November 3, 2009, the FDIC recorded an Assignment of Security Interest and Other Loan Documents to BB&T. **Exhibit 4**.

14. On February 18, 2010, Big Stuff filed a Chapter 11 bankruptcy petition in *In re Big Stuff Storage, LLC*, Case No. BK-N-10-50471-GWZ (Bankr. D. Nev.).

15. On December 30, 2010, the bankruptcy court entered its order confirming Big Stuff's plan of reorganization.

16. On December 22, 2011, BB&T recorded a notice of default due to Big Stuff's failure to comply with the terms the note and its plan of reorganization, specifically, failure to make payments due on the note, failure to make property tax payments, and the filing for bankruptcy by two guarantors of the note. **Exhibit 5**.

17. On February 14, 2012, the City of Reno recorded a lien against the Property for unpaid sewer bills.

18. On February 23, 2012, the bankruptcy court granted the Acting U.S. Trustee's motion to convert the case to Chapter 7 due to postconfirmation defaults under the plan of reorganization.

19. On February 24, 2012, the Acting U.S. Trustee appointed Christina Lovato as the Chapter 7 Trustee over the bankruptcy estate of Big Stuff.

20. On April 9, 2012, the bankruptcy court entered its order granting the stipulation between Ms. Lovato and BB&T that there is no bankruptcy automatic stay under 11 U.S.C. § 362(a) based on the prior confirmation of Big Stuff's plan of reorganization. **Exhibit 6**.

21. On April 10, 2012, the bankruptcy court entered its order authorizing Ms. Lovato to operate the business of Big Stuff.

22. On May 11, 2012, Ms. Lovato advised BB&T that she will not operate the business of Big Stuff after May 31, 2012, and that she intends to abandon the property to Big Stuff.

23. Big Stuff has not cured the defaults described in this compliant.

24. Big Stuff owes approximately $1,000,000 to BB&T as of the filing of this complaint.

## III. CLAIMS

### COUNT I
### JUDICIAL FORECLOSURE
### (Against all Defendants)

25. BB&T hereby incorporates the allegations contained in the paragraphs above of this Complaint as if fully set forth herein.

26. BB&T seeks judicial foreclosure because Big Stuff has defaulted under the terms of the Loan Documents.

27. BB&T is entitled to judicial foreclosure as permitted by NRS 40.430 et al and/or the terms of the Loan Documents.

### COUNT II
### APPOINTMENT OF RECEIVER, SPECIFIC PERFORMANCE,
### AND/OR INJUNCTIVE RELIEF
### (Against Big Stuff)

28. BB&T hereby incorporates the allegations contained in the paragraphs above of this Complaint as if fully set forth herein.

29. BB&T seeks the appointment of a receiver because Big Stuff stipulated to such appointment in the Loan Documents based on its default under the terms of its Loan Documents.

30. BB&T is entitled to the appointment of a receiver under NRS 32.010(1)-(2) because it has an interest in the property by virtue of its first priority deed of trust, and it appears the mortgaged property is in danger of being materially injured.

31. BB&T is entitled to the appointment of a receiver under NRS 107.100 because it appears that personal property subject to the deed of trust is in danger of being materially injured, and/or the real property subject to the deed of trust is in danger of substantial waste or that the income therefrom is in danger of being lost.

32. BB&T is entitled to take possession of and manage Big Stuff's property and collect rents under the terms of the Loan Documents, which rents constitute additional collateral for the repayment

of the obligations of Big Stuff to BB&T.  Furthermore, BB&T is entitled to specific enforcement of the assignment of rents provisions contained in the Loan Documents, which can be most expeditiously handled through the appointment of a receiver.

### COUNT III
### TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIONS
(Against Big Stuff)

33.  BB&T hereby incorporates the allegations contained in the paragraphs above of this Complaint as if fully set forth herein.

34.  In aid of the receiver, BB&T seeks temporary restraining orders and a preliminary and permanent injunction restraining and enjoining Big Stuff, its agents, officers, members, managers, employees and representatives, and any and all persons acting at the direction of, or in concert with any of the foregoing, from, among other things, engaging in, or performing, directly or indirectly, any or all of the following acts:

(a)   Committing or permitting any waste of the Property or any part thereof, or suffering or committing or permitting any act on the Property, including but not limited to any or all of the Property that may be under the control and/or or possession of the receiver ("Receivership Property") or any part thereof in violation of law, or removing, transferring, encumbering or otherwise disposing of any of the property comprising the Property or any part thereof;

(b)   Directly or indirectly interfering in any manner with the discharge of the Receiver's duties under his Order or the Receiver's possession of and operation or management of the Receivership Property;

(c)   Expending, disbursing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in, encumbering, concealing or in any manner whatsoever dealing in or disposing of the whole or any part of the Property or the Receivership Property without prior specific Court Order;

(d)   Withholding any portion of the Property or any Big Stuff's assets, books, records, or funds related to the Property from the Receiver; and

(e)   Doing any act which will, or which will tend to impair, defeat, divert, prevent or prejudice the preservation of the Property or the Receivership Property.

## IV.  PRAYER

WHEREFORE, BB&T prays for the following relief:

1. That BB&T be permitted to proceed with judicial foreclosure;

2. That BB&T be permitted to select a receiver to operate and manage the business of Big Stuff;

3. That BB&T's request to enjoin the parties from conduct detrimental to BB&T's interest in the assets of Big Stuff.

4. For any other relief warranted or sought in this proceeding.

Dated this 24th day of May, 2012          ARMSTRONG TEASDALE LLP


                                          By:    /s/Louis M. Bubala III
                                          LOUIS M. BUBALA III, ESQ.
                                          Attorneys for Plaintiff

## TABLE OF EXHIBITS

| Exhibit No. | Description |
| --- | --- |
| 1 | Note |
| 2 | Deed of Trust |
| 3 | Assignment of Rents |
| 4 | FDIC Assignment |
| 5 | Notice of Default |
| 6 | Bankruptcy Order re Automatic Stay |