LOUIS M. BUBALA III, ESQ.
State Bar No.: 8974
ARMSTRONG TEASDALE LLP
50 W. Liberty St., Ste. 950
Reno, NV 89501
Telephone:  775.322.7400
Fax:  775.322.9049
Email:  lbubala@armstrongteasdale.com
  and   bsalinas@armstrongteasdale.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BRANCH BANKING & TRUST CO., | Case No. 3:12-cv-00279-___-_____ |
| Plaintiff, | **EMERGENCY MOTION AND PROPOSED ORDER FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND APPOINTMENT OF A RECEIVER** |
| vs. | |
| BIG STUFF STORAGE LLC; MARY C. MILLER; JOHN A. SCHOPF, JR.; WENDY AUSLEN SCHOPF; and CITY OF RENO, | |
| Defendants. | |

Plaintiff Branch Banking & Trust Co. ("BB&T" or "Lender") files this motion based on the attached memorandum, exhibits, the complaint and attached documentation, supporting declarations filed contemporaneously, and any other papers filed in the matter.

## **INTRODUCTION**

BB&T files an emergency motion to preserve the value of Defendant Big Stuff Storage LLC's storage business, the collateral for $1.0 million in debt owed to BB&T.  The property currently is managed by a bankruptcy trustee, but she intends to abandon it as of June 1, 2012.  BB&T has no reason to believe the Big Stuff can or will manage the property.  BB&T already has recorded a notice of default, and it anticipates non-judicial foreclosure to occur in June 2012.  To maintain the property as a going concern, BB&T seeks the appointment of a receiver starting June 1, 2012, to manage the property until the foreclosure is complete.  If this motion is not heard on an emergency basis, there is substantial risk of irreparable harm to both Big Stuff's storage property and BB&T's collateral interest due to a lack of management.

BB&T contacted the defendants prior to filing this motion.  Big Stuff has not yet responded as to their position on the receivership.  However, there is no objection to the appointment of a

receiver from the Schopf/Miller Defendants, who recorded a second deed of trust against the property; the City of Reno, which recorded a $575 lien for unpaid sewer fees; or Christina W. Lovato, the bankruptcy trustee (who is not a party to this action). The details of the consents and service of the papers are detailed in counsel's supporting declaration, filed contemporaneously.

This motion is filed pursuant to Federal Rule of Civil Procedure 65, Local Rule 7-5, NRS 32.010, and NRS 107.100 for a temporary restraining order and appointment of a receiver. The appointment of a receiver also is contractually authorized and agreed to in the loan documents between BB&T and Big Stuff.

A receiver is warranted in these circumstances. Big Stuff originally defaulted on its loan obligations in 2009, but a foreclosure sale was stayed when Big Stuff filed for bankruptcy in February 2010. The Bankruptcy Court confirmed a plan of reorganization in December 2010, but Big Stuff repeatedly defaulted on its postconfirmation obligations to make loan and tax payments. Furthermore, two of Big Stuff's members (and guarantors of Big Stuff's debt) filed a Chapter 7 petition, resulting in an uncurable default under the loan documents. BB&T was unable to informally resolve the postconfirmation defaults and recorded another Notice of Default in December 2011.

Foreclosure was delayed again in February 2012 when the Bankruptcy Court converted the case and approved the appointment of a trustee to determine whether there are assets to pay Big Stuff's unsecured creditors. The trustee has been unable to find a buyer for the property or otherwise find additional assets to pay unsecured creditors. The trustee is abandoning the property effective June 1, 2012. The property reverts as a matter of law to the debtor, Big Stuff Storage LLC.

BB&T does not believe Big Stuff will manage the property due to the impending foreclosure. BB&T also does not believe Big Stuff should manage the property based on its prior conduct. Given all of these factors, BB&T brings this action and motion to obtain the appointment of a receiver to manage the property until it can complete the foreclosure. The Bankruptcy Court previously ordered that the automatic stay does not apply. *See* Ex. 6 attached to complaint.

## MEMORANDUM

This motion is brought on the grounds that good cause exists for the requested order for injunctive relief and appointment of a receiver for the following reasons:

1. Big Stuff originally executed the note, deed of trust, and assignment of rents with Colonial Bank, N.A.  See exhibits attached to complaint.  On or about August 19, 2009, Colonial Bank was closed by the Alabama State Banking Department, and the Federal Deposit Insurance Corporation ("FDIC") was named Receiver.  On or about November 3, 2009, the FDIC recorded an Assignment of Security Interest and Other Loan Documents to BB&T.

2. BB&T holds the first priority deed of trust against this property as security for its debt under the note owed by Big Stuff.  By executing the deed of trust, Big Stuff expressly agreed that, if it defaulted in its obligations, Lender would be contractually entitled to have a receiver appointed.  The specific language embodying this written agreement (on which Lender relied in making this loan) is as follows:

> **Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness.  The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Complaint, Ex. 2, Deed of Trust at 11.

3. By executing the Deed of Trust, Big Stuff also agreed in writing that, in the event of a default, Lender should be entitled to enter the property, collect rents, and take over all accounts related to the property, as stated in the Deed of Trust as:

> **Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property, and, whether or not Lender takes possession, collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. … Lender may exercise its rights under this subparagraph either in person, by agent, or **through a receiver**.

Complaint, Ex. 2, Deed of Trust at 11 (emphasis added).

4. BB&T has not located any Nevada law regarding the contractual right to a receiver. However, California has held that a contractual right "presents a prima facie, but rebuttable, evidentiary showing of the beneficiary's entitlement to the appointment of a receiver." *Barclays Bank v. Superior Court*, 69 Cal.App.3d 593, 602 (Cal. Ct. App. 1977).  Other courts have considered

a lender's contractual consent to be a significant factor for the appointment of a receiver. *E.g., Huntington Nat'l Bank v. Big Sky Dev. Flint, LLC*, Case No. 10-10346, 2010 WL 3702361, *5 (E.D. Mich. Sept. 16, 2010) (appointing receiver based on contractual consent); *Thompson v. Branch Banking & Trust Co.*, Case No. 2009-CA-001217-MR., 2009 WL 1636369 (Ky. Ct. App. June 12, 2009) (unpublished) (affirming appointment based on contractual consent); *see also Stonebridge Bank v. NITA Props., LLC*, Case No. 09-5145 (RBK/JS), 2011 WL 2173771, *2 (D.N.J. June 1, 2011) (contractual consent "heavily favors" appointment).

5. BB&T seeks to exercise its rights to a receiver now because the bankruptcy trustee is going to abandon the property back to Big Stuff. The trustee filed a motion on May 24, 2012, seeking the Bankruptcy Court's approval of the abandonment. Based on counsel's experience in bankruptcy court and knowledge of the Big Stuff bankruptcy case, BB&T believes the motion will be granted.

6. Big Stuff either will not or should not manage the property. Big Stuff has a long history of financial troubles and noncompliance with its obligations under the loan. Big Stuff has breached its obligations by failing to make payments before, during and after its bankruptcy; by failing to pay property taxes; by failing to pay sewer fees; and by the separate Chapter 7 bankruptcy filings by two of its members, who were guarantors of the debtor and represented during the bankruptcy that they could infuse additional funds in Big Stuff. Even after confirming a plan of reorganization, the Bankruptcy Court concluded that Big Stuff's postconfirmation defaults warranted the conversion of the bankruptcy case and appointment of a Chapter 7 trustee. This is the clearest evidence that Big Stuff is not an appropriate manager of the property between the time the trustee abandons the property and BB&T forecloses on it. The history of defaults is detailed in the brief BB&T filed in the Bankruptcy Court in opposition to the motion to convert the case. A copy is attached to this motion as **Exhibit 1**.

7. On December 22, 2011, Stewart Title, the trustee for BB&T on its deed of trust, recorded against the Collateral, recorded a notice of default with the Washoe County Recorder. A copy of the notice is attached to the complaint. BB&T anticipates that the notice of sale will be recorded on May 25, 2012, with a sale anticipated to occur on June 18, 2012.

8. BB&T is thus entitled to the appointment of a receiver under the terms of the deed of trust and NRS 32.010(1)-(2) and NRS 107.100.  Additionally, if a security document, such as the deed of trust in favor of BB&T, contains an absolute assignment of rents provision, the secured party may enforce the provision, even if the security is not impaired.  *In re Charles D. Stapp of Nev., Inc.*, 641 F.2d 737 (9th Cir. 1981) (applying Nevada law).

9. Good cause also exists to appoint a receiver on an emergency basis because irreparable injury would be suffered by BB&T if emergency relief is not provided by the Court.  *Maynard v. Railey*, 2 Nev. 313, 317 (1866).  The Collateral requires immediate attention and management because it us unlikely that Big Stuff will provide the rents from its storage property to BB&T, since it did not due so before the appointment of the Chapter 7 Trustee.   Unless a receiver is appointed immediately, the rent paid by current tenants to Big Stuff will not be recovered.

10. There is no adequate remedy at law to enforce the provisions of the Deed of Trust and it is necessary that a receiver be appointed to take possession and charge of Big Stuff's property and to conserve and manage it pending the sale under the terms of the Deed of Trust, and to collect any and all rents, issues, income, interest in leases and/or profits thereof pending such sale.

11. BB&T requests that no bond be required of it for the temporary restraining order, or if one is required, that the Court fix BB&T's bond in the amount of $500.  No statute requires that the moving party provided a bond to secure against damages.  *Bowler v. Leonard*, 70 Nev. 370, 386 (1954).  The court may require security for the appointment of a receiver and the amount of security is left to the discretion of the court.  *Id.* at 386-87; *Kraemer v. Kraemer*, 79 Nev. 287, 293 (1963).  A bond may be requested by the court to protect parties from injury resulting from an action of the receiver outside of his or her court granted authority.  *Nevada Civil Practice Manual* § 30.03[3] (2007).  However, Big Stuff will not sustain damages by reason of the appointment of a receiver because it is undisputed that the deed of trust expressly entitles BB&T to the appointment of a receiver upon Big Stuff's default, and Big Stuff is in default.  To the extent the court believes a bond is appropriate for the appointment of a receiver, BB&T submits that $25,000 is sufficient.

12. BB&T has made no prior application to a judicial officer for the same or similar relief.

13. The proposed receiver, Cheryl A. Evans of Coldwell Banker Commercial Premier Brokers, is prepared to execute the necessary oath and file such undertaking as may be required by the Court as a condition of her appointment as receiver. The receiver's qualifications filed contemporaneously with the supporting declaration from Ms. Evans.

Therefore, BB&T requests the following relief:

a. The appointment of a receiver based on the proposed order, attached as **Exhibit 2**.

b. A temporary restraining order directing Big Stuff, and its respective agents, representatives, assignees, and employees to: (a) immediately turn over possession of the Property to the receiver, including any security deposits, prepaid rent, other rental or lease payments, and funds in property management bank accounts for the Collateral; (b) immediately turn over to the receiver all keys, books, documents, and records relating to the Collateral and advise the receiver of federal taxpayer identification numbers relating to the Collateral; (c) immediately advise the receiver about the nature and extent of insurance coverage on the Collateral and immediately name the receiver as an additional insured on each insurance policy on the Property without otherwise canceling, reducing, or modifying the insurance coverage; (d) refrain and be enjoined from: (i) committing or permitting any waste on the Collateral or any act on the Collateral in violation of law or removing, encumbering, or otherwise disposing of any fixtures on the Collateral; (ii) demanding, collecting, or in any other way diverting or using any of the rents from the Collateral; (iii) interfering in any manner with the discharge of the receiver's duties; (iv) selling, transferring, disposing, encumbering, or concealing any portion of the Collateral, including but not limited to, all buildings and other similar structures, without a prior court order; and (v) doing any act that will impair the preservation of the Collateral or Lender's interest in the Collateral.

c. An order to show cause why the emergency appointment of Cheryl A. Evans of Coldwell Banker Commercial Premier Brokers as receiver should not be confirmed and the issuance of a preliminary injunction, which shall provide for the same type of relief pending trial of this action as that requested in the paragraph above with respect to the temporary restraining order.

Dated this 24th day of May, 2012        ARMSTRONG TEASDALE LLP

By:     /s/Louis M. Bubala III
LOUIS M. BUBALA III, ESQ.